# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 13, 2009

Charles R. Fulbruge III
Clerk

No. 08-50144

EQUAL ACCESS FOR EL PASO INC

Plaintiff-Appellant

v.

ALBERT HAWKINS, Commissioner of the Texas Health and Human Services Commission, Individually and in his official capacity

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Plaintiff-Appellant Equal Access for El Paso, Inc. ("Equal Access") appeals the district court's order granting Defendant-Appellee Albert Hawkins's ("Hawkins")[1] Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Equal Access and other plaintiffs brought suit against Hawkins, alleging, inter alia, violations of the "Reasonable Promptness Provision" of the Medicaid Act, 42 U.S.C. § 1396a(a)(8), and the Supremacy Clause of the U.S.

---

[1] Albert Hawkins is the Commissioner of the Texas Health and Human Services Commission.

Constitution.[2]   For the following reasons, we AFFIRM the district court's dismissal of Equal Access's suit.

## I. FACTS AND PROCEDURAL HISTORY

### A.   The Medicaid Program

Medicaid is a jointly funded and operated federal-state health care program that provides funding for medical care, prescription drugs, and long-term care for low-income individuals.  *See* 42 U.S.C. §§ 1396-1396v.  State participation in the program is voluntary, but states that choose to participate must comply with the provisions of the Medicaid Act and its implementing regulations, 42 C.F.R. §§ 430.0-456.725, which set the program's parameters and establish its basic requirements.  To qualify for federal funding, a state must submit to the Secretary of Health and Human Services a "plan[] for medical assistance"—"a comprehensive . . . statement . . . describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX."  42 U.S.C. § 1396; 42 C.F.R. § 430.10.  The state maintains the responsibility for administering its Medicaid program, subject to federal oversight.  *See* 42 C.F.R. § 430.0.  The Texas Health and Human Services Commission ("HHSC") is the state agency tasked with running Texas's Medicaid program and, inter alia, setting the reimbursement rates paid to health care providers who perform services for Medicaid recipients.

### B.   Procedural History

Medicaid recipients and medical service providers, along with Equal Access, a public interest group representing each (collectively "Plaintiffs"), brought this action against Hawkins, the Commissioner of the HHSC,

---

[2] They further alleged violations of the Equal Protection Clause of the Fourteenth Amendment and various other provisions of the Medicaid Act, but they do not pursue these challenges on appeal.

challenging his administration of the Texas Medicaid program in El Paso County, Texas. Specifically, Plaintiffs alleged that Hawkins "failed to ensure that Medicaid recipients received adequate medical assistance, equal to that of the general population, that was provided with reasonable promptness, all of which is mandated by the Medicaid Act." Of particular relevance to this appeal, they asserted that (1) Hawkins's practices and the HHSC's procedures for administering the Medicaid program violated the Reasonable Promptness Provision of the Medicaid Act, thereby entitling them to relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, and (2) Hawkins's alleged violations of the Medicaid Act violated the Supremacy Clause of the U.S. Constitution.

Hawkins moved to dismiss all of Plaintiffs' claims. The district court granted Hawkins's motion as to all claims except one, and following our remand in an interlocutory appeal, *see Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697 (5th Cir. 2007), ultimately issued a final judgment dismissing Plaintiffs' entire case. Equal Access timely appealed, challenging only the district court's dismissal of its claims alleging that Hawkins violated the Reasonable Promptness Provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(8), and the Supremacy Clause. It contends that the district court erred in finding that the provision requires only reasonably prompt *payment* for medical services received. According to Equal Access, because the Reasonable Promptness Provision requires the reasonably prompt provision of actual medical services, Hawkins violated the Act by failing to ensure that Medicaid recipients received prompt medical care.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the district court's order dismissing Plaintiffs' case pursuant to 28 U.S.C. § 1291.

We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th

Cir. 2008). In evaluating the propriety of the district court's 12(b)(6) dismissal, we must construe the complaint in the light most favorable to the plaintiff and affirm only "if we determine that the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 247 (5th Cir. 2008) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A.    42 U.S.C. § 1983 Claim

Equal Access first claims, pursuant to 42 U.S.C. § 1983,[3] that Hawkins improperly deprived Medicaid recipients of their right to "medical assistance . . . with reasonable promptness," as guaranteed by 42 U.S.C. § 1396a(a)(8). The Reasonable Promptness Provision of the Medicaid Act provides that "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Equal Access asserts that this provision guarantees prompt medical care and services to Medicaid recipients, not merely prompt payment for medical care and services actually received. Its arguments, however, are unavailing.

The Medicaid Act expressly defines "medical assistance." As used in the Act, "medical assistance" means "payment of part or all of the cost of . . . care and services . . . for individuals" who meet certain eligibility requirements. 42 U.S.C. § 1396d(a). Consistent with this definition, the Act expressly refers to

---

[3] 42 U.S.C. § 1983 provides for liability against any person who, acting under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. It creates a cause of action for the infringement of rights guaranteed by federal law, *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), including, in appropriate cases, violations of the Medicaid Act, *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 524 (1990); *Bryson v. Shumway*, 308 F.3d 79, 88 (1st Cir. 2002).

"medical assistance" in financial terms. *See, e.g.*, *id.* § 1396d(b) (referring to "amounts expended as medical assistance for services").

Basic canons of statutory interpretation require that this court apply the Medicaid Act's definition of "medical assistance" to the Reasonable Promptness Provision. As the Supreme Court has explained, in the usual case, "[s]tatutory definitions control the meaning of statutory words," *Burgess v. United States*, 128 S. Ct. 1572, 1577 (2008), and "[i]t is axiomatic that the statutory definition of [a] term excludes unstated meanings of that term," *Meese v. Keene*, 481 U.S. 465, 484 (1987); *see Conoco, Inc. v. Fed. Energy Regulatory Comm'n*, 622 F.2d 796, 800 (5th Cir. 1980) (noting "the general rule that the definition supplied by the legislature should be used"). Thus, "[a]s a rule, a definition which declares what a term 'means' . . . excludes any meaning that is not stated." *Colautti v. Franklin*, 439 U.S. 379, 392 n.10 (1979) (omission in original, alteration and internal quotation marks omitted). The district court was therefore correct to apply the definition of "medical assistance" provided in the statute.

Here, the definition of "medical assistance," as it is used throughout the Medicaid Act, is clear from the text of the Act itself. The Act explicitly provides that "medical assistance" means "payment" for various medical services. Indeed, this court has expressly held just that. *See S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 586 (5th Cir. 2004). We have explained that "[t]he Medicaid Act defines 'medical assistance' as 'payment of part or all of the cost of . . . care and services' included in an enumerated list of twenty-seven general health care categories ('medical assistance categories')." *Id.* (quoting 42 U.S.C. § 1396d(a)) (omission in original). This interpretation is consistent with that of other circuits to address the definition of "medical assistance" in the Medicaid Act. *See Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006) ("The most reasonable interpretation of § 1396a(a)(8) is that all eligible individuals should have the opportunity to apply for medical assistance, i.e., financial assistance, and that

such medical assistance, i.e., financial assistance, shall be provided to the individual with reasonable promptness."); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003) ("[T]he statutory reference to 'assistance' [in the Medicaid Act] appears to have reference to *financial* assistance rather than to actual medical *services* . . . ."); *see also Okla. Chapter of the Am. Academy of Pediatrics (OKAAP) v. Fogarty*, 472 F.3d 1208, 1214 (10th Cir. 2007) (rejecting the plaintiffs' argument that the Reasonable Promptness Provision "makes a state Medicaid program directly responsible for ensuring that the medical services enumerated in the Medicaid Act . . . are actually provided to Medicaid beneficiaries in a reasonably prompt manner" and noting "agree[ment] with the Seventh Circuit's decision in *Bruggeman* that the term 'medical assistance' as employed in [the Reasonable Promptness Provision] refers to financial assistance rather than to actual medical services" (internal quotation marks omitted)); *Mandy R. ex rel. Mr. & Mrs. R. v. Owens*, 464 F.3d 1139, 1143 (10th Cir. 2006) ("The statutory definition mentions payment for, but not provision of, services. In other words, 'the statutory reference to "assistance" appears to have reference to *financial* assistance rather than to actual medical services.'" (quoting *Bruggeman*, 324 F.3d at 910)).[4]

---

[4] Equal Access's argument that there is a circuit split regarding the definition of "medical assistance" lacks merit. It cites two circuit court decisions as holding that "medical assistance" means actual medical services and not payment for such services: *Bryson v. Shumway*, 308 F.3d 79 (1st Cir. 2002), and *Doe v. Chiles*, 136 F.3d 709 (11th Cir. 1998). However, neither of these cases actually stands for this proposition. The first, *Bryson*, addressed only the question of whether the Reasonable Promptness Provision provided a private right of action. *See* 308 F.3d at 88-89. Nowhere did the *Bryson* court state that "medical assistance" means "medical services." *Chiles* similarly addressed the question of whether the Reasonable Promptness Provision created a private right of action. *See* 136 F.3d at 714-17. Although the court quoted the unexplained statement in *Sobky v. Smoley*, 855 F. Supp. 1123 (E.D. Cal. 1994), that "medical assistance . . . can only mean medical services," the court did not specifically address this question. *See Chiles*, 136 F.3d at 715 n.13 (quoting *Sobky*, 855 F. Supp. at 1147). Furthermore, the Third Circuit's decision in *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004), which Equal Access also cites as indicating an apparent circuit split on the meaning of "medical assistance," expressly reserved this

Moreover, analysis of the statute as a whole bolsters our conclusion that "medical assistance" refers to payment and not to actual medical services. When referring to medical services, the Medicaid Act uses the term "care and services." *See, e.g.*, 42 U.S.C. § 1396a(a)(2) (requiring states to provide for sufficient financial participation to ensure that "the lack of adequate funds from local sources will not result in lowering the amount, duration, scope, or quality of care and services available under the plan"); § 1396a(a)(24) (requiring states to "provide information needed to determine payments due under this chapter on account of care and services furnished to individuals"). Most tellingly, various provisions of the Medicaid Act use the phrases "medical assistance" and "care and services" in the same sentence. *See, e.g.*, § 1396a(a)(22) (requiring states to adopt "standards and methods . . . to assure that medical or remedial care and services provided to recipients of medical assistance are of high quality"); § 1396a(a)(34) (requiring states to "provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan . . . if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished").[5] If "medical assistance" meant "medical services," these provisions would be rendered nonsensical.

---

question because "the only issue" before the court was whether the plaintiffs could sue a state under 42 U.S.C. § 1983 "to obtain 'assistance' for which they qualify" under the Medicaid Act, *id.* at 181 n.1.

[5] *See also, e.g.*, 42 U.S.C. § 1396a(a)(9)(A) (requiring that a state agency "shall be responsible for establishing and maintaining health standards for . . . institutions in which recipients of medical assistance under the plan may receive care or services"); § 1396a(a)(70) (giving states the option of providing for programs "to more cost-effectively provide transportation for individuals eligible for medical assistance under the State plan who need access to medical care or services").

Equal Access, however, contends that construing "medical assistance" to refer to payments for medical services would render the language of the statute nonsensical. Equal Access notes that the Reasonable Promptness Provision provides that "medical assistance . . . shall be furnished with reasonable promptness to all eligible individuals." § 1396a(a)(8). Eligible individuals, it asserts, can only refer to beneficiaries of Medicaid, not medical service providers; thus, the provision would apparently contemplate financial assistance being provided to Medicaid recipients. Equal Access argues that this leads to a nonsensical meaning of the statute because Texas law prohibits Medicaid beneficiaries from receiving payment for medical services they obtain. *See* 1 TEX. ADMIN. CODE ANN. § 354.1131(b). The Medicaid Act, however, permits individual Medicaid recipients to receive payment for medical services they obtain, at the option of the state. *See* 42 U.S.C. § 1396d(a) ("The term 'medical assistance' means payment of part or all of the cost of . . . care and services . . . for individuals, and, with respect to physicians' or dentists' services, at the option of the State, to individuals."); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1210 (6th Cir. 1997) ("Federal law allows states to pay either the provider or, in some circumstances, the patient."); *see also* 42 C.F.R. § 447.25(d)(1) ("Direct payments to recipients . . . are an alternative to payments directly to providers . . . ."). Thus, notwithstanding Texas's prohibition on direct payments to Medicaid beneficiaries, construing "medical assistance" to mean "payments for financial services" does not give the Medicaid Act a nonsensical meaning.[6]

---

[6] Equal Access asserts for the first time on appeal that Hawkins indirectly violated the Medicaid Act by setting Medicaid reimbursement rates too low. It argues that "HHSC's reimbursement levels are so insufficient when compared to costs being paid by recipients of private insurance that many health care providers are unwilling or unable to provide services to Medicaid recipients." It further claims that "[t]his frustrates the purpose of the Reasonable Promptness Provision by foreclosing the opportunity for eligible individuals to receive medical services at all, much less in a timely manner." Because Equal Access did not make this argument to the district court, instead contending only that "medical assistance" means "medical services," it is waived. *See Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d

Accordingly, because the statutory definition of "medical assistance" is clear and supported by case law, Equal Access's § 1983 claim fails.

## B. Supremacy Clause Claim

Equal Access argues that Hawkins violated the Supremacy Clause because "relevant provisions of the Medicaid Act preempt HHSC's refusal to provide reasonably prompt medical assistance for the Medicaid recipients." Specifically, it asserts that "[b]ecause HHSC refuses to provide adequate reimbursement rates for Medicaid services, HHSC's actions are in direct conflict with the Reasonable Promptness Provision of the Medicaid Act."

Equal Access has no viable claim under the Supremacy Clause because it failed to identify any state law or regulation with which the Reasonable Promptness Provision conflicts and therefore preempts. By its own terms, the Supremacy Clause provides that federal law is supreme over "any Thing in the Constitution or Laws of any State." U.S. CONST. art. VI, cl. 2. Thus, the clause "mandates that federal law overrides, *i.e.*, preempts, any state regulation where there is an actual conflict between the two sets of legislation." JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 9.1 (7th ed. 2004). The clause "is not a source of any federal rights"; rather, § 1983 provides a cause of action to remedy violations of federal rights guaranteed by the Constitution or by statute. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105-07 (1989). As explained above, Equal Access does not have a viable § 1983 claim. Accordingly, this argument also fails.

## IV. CONCLUSION

For the reasons stated above, we hold that the district court properly granted Hawkins's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). We therefore AFFIRM the judgment of the district court.

---

503, 510 (5th Cir. 2005); *Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004).

AFFIRMED.