# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2022

Lyle W. Cayce
Clerk

No. 21-20278

Sam Barr,

*Plaintiff—Appellant*,

*versus*

Stripes L.L.C.;
Energy Transfer Partners L.P./Sunoco L.P.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-296

Before King, Jones, and Duncan, *Circuit Judges*.

Per Curiam:*

Sam Barr accuses his former employer, Stripes LLC, of discriminating against him because of his age, creating a hostile work environment, and retaliating against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and Chapter 21 of the Texas Labor

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20278

Code. Following Barr's case-in-chief at trial, the district court granted Stripes's motion for judgment as a matter of law, finding that Barr failed to exhaust his administrative remedies for his state claims and failed to timely file his federal claims. For the following reasons, we AFFIRM.

## BACKGROUND

### I.   The Alleged Age Discrimination

Sam Barr worked for Stripes as a stocker at one of its gas station convenience stores from October 2010 until he was terminated on March 3, 2016. Unsurprisingly, both parties provide vastly different theories regarding the reason for Barr's termination. Stripes asserts that management terminated Barr for multiple performance deficiencies. But Barr argues that these "performance deficiencies" were pretext for the real reason for his termination, which was his age.[1]

Barr worked at the company's "flagship" location. Because this location generated much of the company's business, it caught management's attention when the store was not performing well. To redress this issue, Stripes replaced the store's management in the spring of 2015. Tim Foster took over as General Manager and Theresa Ferm took over as Assistant General Manager.

Barr contends that, prior this management change, he had a very successful career at Stripes, during which he received employee awards and was never reprimanded or disciplined. But that all changed shortly after Foster and Ferm began their tenures. Barr alleges that, from the very beginning, Ferm repeatedly berated and insulted him about his age and general slowness. She supposedly told him that he needed to quit so that she

---

[1] Barr was 63 years old at the time of his termination.

could hire a 19-year-old at minimum wage. When he would not quit, she allegedly cut his hours, causing him to lose his benefits.

Barr claims that he complained to human resources on multiple occasions for his mistreatment and reduced hours. He also visited the Texas Workforce Commission ("TWC") on July 1, 2015 to apply for partial unemployment when his hours were reduced. Even though he eventually got his hours and benefits restored, he claims that Ferm's hostile treatment intensified and became "chronic."

Despite a previously clean record, Barr was written up four times in the months that ensued, eventually resulting in his termination. Ferm first wrote Barr up for failing to stock disposable hand towels in the dispensers at the gas pumps. Five months later, Ferm wrote Barr up a second time for taking a break even though the soda fountain drink dispenser needed to be restocked with 44-oz cups. Days later, Tim Foster wrote Barr up for failing to stock the Coca-Cola cooler at the beginning on his morning shift. On March 3, 2016, Foster wrote Barr's final write-up, which was also his termination notice. Barr supposedly failed to organize crates after Foster had instructed him to. Barr challenges the legitimacy of each of these write-ups, suggesting that they were pretextual and that his termination was actually motivated by his age and his complaints to human resources.

## II.    Administrative Remedies

Immediately after his termination, Barr filed a claim with the TWC for unemployment benefits. Although the TWC process primarily addressed Barr's eligibility for unemployment benefits, the TWC records did acknowledge his claims of age discrimination. But nothing in the TWC records indicated that Barr intended to pursue claims of discrimination or that he authorized the TWC to investigate his allegations.

No. 21-20278

Barr filed an intake questionnaire with the EEOC in November 2016,[2] on which he indicated his intent to pursue claims of discrimination and provided his authorization for the EEOC to investigate further. All parties agree that this questionnaire qualifies as an administrative complaint to the EEOC and TWC for purposes of federal and state law.[3] After its investigation, the EEOC concluded that Barr was "terminated for performance issues which [he] had been warned about" and that there was insufficient evidence to suggest that Foster or Ferm were motivated by age

---

[2] In the district court, the parties disputed whether this intake questionnaire was the first complaint that qualified as a charge of discrimination. On August 8, 2016, the EEOC received an initial intake questionnaire from Barr, but he failed to check the box indicating that he intended to pursue claims of discrimination and that he wanted the EEOC to investigate. This was a necessary feature for the questionnaire to count as a charge of discrimination. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S. Ct. 1147, 1157–58 (2008). After the EEOC informed him that he needed to complete this aspect of the form, Barr allegedly returned to the EEOC and completed the form. In an affidavit, he attests that he did so within two weeks of initially submitting the questionnaire. But the official EEOC records suggested otherwise. Because of the conflicting evidence, the trial judge determined at the summary judgment stage that this conflict ultimately posed a fact question for the jury. At trial, however, the district court refused to admit the checked questionnaire because Barr failed to adequately authenticate it.

It is unclear whether Barr challenges this ruling on appeal. On the one hand, he repeatedly admits that the "uncontroverted evidence" shows that November 29, 2016 is the date on which he filed his charge of discrimination. Yet, confusingly, he also complains about the district court's refusal to admit the checked-August questionnaire into evidence. Ultimately, Barr asserts no substantive argument as to why the district court's exclusion was improper and, thus, the court declines consider the issue. *United States v. Avants*, 367 F.3d 433, 442 (5th Cir. 2004) (parties forfeit inadequately briefed evidentiary objections).

[3] *Holowecki*, 552 U.S. at 402, 128 S. Ct. at 1157–58; 40 TEX. ADMIN. CODE § 819.71(2) ("For a complaint filed with EEOC and deferred to [TWC's Civil Rights Division], timeliness of the complaint shall be determined by the date on which the complaint is received by EEOC.").

4

when they terminated him.  It issued a right-to-sue letter on June 29, 2017, which Barr claimed to have received on July 6, 2017.

## III.    Procedural History

Barr filed a complaint in Texas state court 88 days after receiving his right-to-sue letter.  But his complaint failed to reference any state or federal statute.  Rather, it simply accused Stripes of "age discrimination in violation of the law."    Accordingly, Stripes filed a special exception seeking clarification regarding the basis of Barr's claims.  Barr soon thereafter amended his complaint to include claims under state law only.  Months later, he amended his complaint a second time to include claims under the ADEA.

As discussed below, these events proved dispositive in the district court.  Thus, for clarity, the relevant timeline is reproduced as follows.

**March 3, 2016**:  Stripes terminated Barr.

**March 3, 2016:**    Barr filed a claim with the TWC for unemployment benefits and tangentially mentioned his discrimination complaints.

**November 29, 2016 (271 days after termination)**:  Barr filed an administrative complaint with the EEOC and the TWC.

**June 29, 2017**:  The EEOC issued a notice of dismissal to Barr (*i.e.*, his right-to-sue letter), which notified him that he "must" file a lawsuit "within 90 days of the date you *receive* this Notice."

**July 6, 2017**:  Barr presumptively received his right-to-sue letter.

**October 2, 2017 (88 days after receipt of right-to-sue letter)**:  Barr filed a complaint in Texas state court.  He accused Stripes of "age discrimination in violation of the law," but did not cite to a specific statutory provision—state or federal—under which Barr sought relief.

No. 21-20278

**November 10, 2017**: Stripes files a special exception seeking clarification of the basis of Barr's lawsuit.

**November 21, 2017 (138 days after receipt of right-to-sue letter)**: Barr filed an amended complaint, specifying that he sought relief under Chapter 21 of the Texas Labor Code.

**January 16, 2018 (194 days after receipt of right-to-sue letter)**: Bar filed a second amended complaint, adding claims under the ADEA.

Stripes removed Barr's suit to federal court once he added the federal claims. Stripes moved to dismiss and, later, for summary judgment, alleging that Barr had failed to timely exhaust his administrative remedies and that his federal claims were untimely. Specifically, it alleged that Barr (i) failed to timely file his administrative complaint with the TWC for purposes of his state claims; and (ii) that he further failed to file suit under the ADEA within 90 days of receiving his notice of dismissal from the EEOC. The district court denied both motions, concluding that there were fact issues underlying both questions best resolved by a jury.[4]

The case went to trial. After Barr presented his case-in-chief, Stripes moved for judgment as a matter of law under Federal Rule of Civil Procedure 50 on the same grounds it sought summary judgment and dismissal. Alternatively, Stripes also argued that Barr's evidence was insufficient to prove his claims on the merits. The court orally granted the Rule 50 motion based on "several grounds, each of which" it determined "[was] dispositive."

*First*, the court held that Barr failed to timely exhaust his state-law claims and, as a result, those claims were barred. Moreover, because the state claims were unexhausted, the original state complaint was not a viable means

---

[4] *See supra* note 2.

for relating the federal claims back. In other words, the federal claims—
which were asserted after the 90-day deadline—could not relate back to this
failed complaint.[5] *Second*, the court listed a number of reasons why the
discrimination claim failed on the merits, including the fact that there was
"no showing of a comparator in the Stripes workplace," "no showing of
retaliation," and no showing of the minimum required "harassment." Barr
moved for a new trial under Federal Rule of Civil Procedure 59, which the
district court denied. Barr timely appealed the grant of Stripes's Rule 50
motion and the denial of his Rule 59 motion.

## STANDARD OF REVIEW

We review the district court's grant of Stripes's Rule 50 motion *de
novo*. *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1112 (5th Cir.), *cert.
denied*, 142 S. Ct. 101 (2021). "Judgment as a matter of law is appropriate if
there is no legally sufficient evidentiary basis for a reasonable jury to find for
a party on an issue." *Id.* (quoting *Industrias Magromer Cueros y Pieles S.A. v.
La. Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002)). *See also* FED. R. CIV.
P. 50(a)(1). The district court's denial of Barr's motion for a new trial is
reviewed for abuse of discretion. *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d
624, 627 (5th Cir. 2018).

## DISCUSSION

The dispositive questions before the court are whether the district
court erred by determining that Barr's state claims were unexhausted and

---

[5] While the district court did not expressly state this while ruling, this seems to
have been the basis for its decision regarding the federal claims. This is the only argument
Stripes presented for the federal claims and the district court engaged orally with this
notion while the parties were debating the issue.

that his federal claims were untimely.   We address each in turn.   We ultimately agree with the district court on both issues, and thus affirm.

## I.    State-law claims

Texas law requires that a claimant seeking to file suit for employment discrimination must first file a complaint with the TWC within 180 days of the unlawful employment practice.  TEX. LABOR CODE ANN. § 21.202(a). This deadline is "mandatory and jurisdictional."[6] *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004).  Because Barr filed his charge with the EEOC 271 days after his termination, his claims under Chapter 21 of the Texas Labor Code were unexhausted.

Barr contends that he actually had 300 days to exhaust his administrative remedies.  Specifically, he cites *Mennor v. Fort Hood Nat. Bank*, 829 F.2d 553 (5th Cir. 1987), for the proposition that the 300-day filing period provided by federal law applies to his state claims as well.  But this is a blatant misreading of *Mennor*.[7]  Federal law provides two separate time limits for prospective plaintiffs to file their charge of discrimination, depending on whether the unlawful conduct occurred in a "deferral state."[8]

---

[6] *Cf. In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306–10 (Tex. 2010) (overturning a previous holding that the Texas Commission on Human Rights Act's two-year statute of limitations was "mandatory and jurisdictional," and determining that it is not jurisdictional but still "mandatory").

[7] *Mennor* pertained to the interpretation of 42 U.S.C. § 2000e-5(e)(1), which is found within Title VII of the Civil Rights Act.  Applicable here is the ADEA's very similar provision, 29 U.S.C. § 626(d)(1).

[8] "A deferral state is one in which (1) a state law prohibiting age discrimination in employment is in effect and (2) a state authority has been set up to grant or seek relief from such discriminatory practice."  *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 765 (5th Cir. 1988) (citing 29 U.S.C. §§ 626(d), 633(b)).

Plaintiffs have 180 days to file a charge of discrimination in a non-deferral state and 300 days to file in a deferral state. *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 765 (5th Cir. 1988). The issue in *Mennor* was which of these two federal deadlines applied to a Title VII claim when the plaintiff *untimely* instituted state or local proceedings in a deferral state. 829 F.2d at 554–55. The court ultimately held that the 300–day filing period applied "whether or not these other proceedings are timely instituted under state or local law." *Id.* at 556.

This holding has no relevance regarding whether Barr satisfied the statutory prerequisites for his state claims. *See id.* at 556 n.11. The federal deadline does not preempt the state deadline in § 21.202(a). Thus, whether a plaintiff filed a timely charge for his or her federal claims has no impact on the analysis regarding whether a plaintiff filed a timely charge for his state claims. *See Ashcroft v. HEPC-Anatole, Inc.*, 244 S.W.3d 649, 651 (Tex. App. —Dallas 2008, no pet.). Barr's state claims were unexhausted and, thus, the district court did not err in determining this as a matter of law.

## II.   Federal-law claims

To bring a claim under the ADEA, a plaintiff must (1) exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC; and (2) file suit within 90 days of receiving a notice of dismissal from the EEOC. 29 U.S.C. § 626(d)(1), (e). The parties agree that Barr exhausted his administrative remedies by timely filing his charge with the EEOC within 300 days. But they dispute whether Barr timely filed suit after receiving his right-to-sue letter. For the following reasons, we conclude that he did not.[9]

---

[9] Barr's arguments on appeal indicate a mistaken understanding regarding the effects of the district court's order denying Stripes summary judgment. He suggests that the district court's order resolved the exhaustion issue once and for all such that it was not free to come to a contrary result later. This is incorrect. A district court is free to grant

No. 21-20278

Barr did not assert a claim under the ADEA until 194 days had lapsed after he received his right-to-sue letter. His initial state court complaint, which was the only one filed within the 90-day period, plainly did not allege a claim under the ADEA. Barr contends that it did not need to because, according to him, the nature of the controversy and the basic issues to be disputed were clear from the face of the complaint. But this is inapposite under federal law, where the 90-day filing requirement is "strictly construed." *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Furthermore, the language of the ADEA provides that "a civil action may be brought *under this section*" within 90 days of receipt of a notice of dismissal. 29 U.S.C. § 626(e) (emphasis added). Filing a vague complaint in state court alleging employment discrimination claim is not a civil action "under this section."

Additionally, as a practical matter, Barr's position is contradicted by the fact that, when Stripes filed a special exception seeking clarification regarding the basis of his claims, Barr amended his complaint by adding only state claims. He did not add his federal claims until months later. Yet he now contends on appeal that everyone should have known that from the beginning he was invoking his rights under the ADEA. We reject such a strained understanding of the 90-day filing requirement. Accordingly, Barr's original state complaint did not satisfy his requirement to file under the ADEA within 90 days.

---

judgment as a matter of law even where it previously denied a summary judgment motion on the same grounds. "[T]he denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25, 87 S. Ct. 193, 195 (1966). *See also Gross v. S. Ry. Co.*, 446 F.2d 1057, 1060 (5th Cir. 1971).

No. 21-20278

Additionally, the ADEA claims do not relate back to the original complaint. Texas law governs whether the federal claims relate back to the initial complaint because the second amended complaint was filed in state court. *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946–47 (5th Cir. 2014). Texas law allows a filing to relate back "to a cause of action . . . *that is not subject to a plea of limitation* when the pleading is filed . . . ."[10] TEX. CIV. PRAC. & REM. CODE § 16.068 (emphasis added). The original state complaint was indeed subject to such limitation because the underlying state claims were barred for being untimely exhausted. Thus, because Barr's complaint was barred when filed due to his unviable state claims, the subsequently added federal claims cannot relate back. *Taylor*, 744 F.3d at 947.

Likewise, the district court did not abuse its discretion when denying Barr's motion for a new trial. We do not reach Barr's challenges to the district court's determination on the merits because failure to exhaust and failure to timely file independently justify resolving this case as a matter of law.[11]

---

[10] "A plea of limitation is an affirmative defense[]" asserting that a plaintiff's claim is barred by limitations. *Weaver v. E-Z Mart Stores, Inc.*, 942 S.W.2d 167, 170 (Tex. App.—Texarkana 1997, no writ) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988)); *see also Murray v. San Jacinto Agency*, 800 S.W.2d 826, 829–30 (Tex. 1990).

[11] We additionally reject Barr's contention that the district court denied him due process by not allowing Barr's counsel to finish arguing his Rule 50 motion before granting Stripes's Rule 50 motion. The record shows that Barr had ample opportunity to present his case and argue for the sufficiency of his evidence. There is no case or statute granting Barr a right to the time and opportunity to orally argue every individual point he wishes to raise, nor does he present a cogent theory regarding why the Constitution supports one.

No. 21-20278

## CONCLUSION

For the foregoing reasons, we AFFIRM.